UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY PEARSON, et al.,

       Plaintiffs,                             Case No.09-12475
                                                          HON. BERNARD A. FRIEDMAN

vs.

SEIU HEALTHCARE MICHIGAN
f/k/a SEIU LOCAL 79,

       Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Plaintiffs' complaint alleges breach of contract arising from their termination from their positions, and arises under Section 301 of the Labor Management Relations Act ("LMRA"). Defendant, SEIU Healthcare Michigan ("Defendant" or "SEIU"), has filed a motion for summary judgment. Plaintiffs filed a response, and Defendant filed a reply. Pursuant to E.D.Mich. L.R. 7.1(e)(2), Defendant's Motion will be decided without oral argument.

**II.    Facts**

The case involves the alleged breach of two contracts: 1) a merger agreement between SEIU HCMI and SEIU Local 79, which was governed by the SEIU Reorganization Agreement ("Reorganization Agreement"); and 2) an agreement between outgoing Local 79 President Willie Hampton and SEIU Local 79 ("Hampton Agreement").

There are many background facts regarding the Plaintiffs' employment histories, their

roles and actions with the Board of Directors, and other matters. However, the Court will present a streamlined factual synopsis pertaining to the present analysis.

### A. The Reorganization Agreement

On June 11, 2007, Defendant SEIU HCMI entered into a merger agreement with SEIU Local 79, executed by the two unions and which was governed by the Reorganization Agreement. Dft. Exh. 1. The Reorganization Agreement governed the relationship between the two unions, providing for the transfer of jurisdiction and collective bargaining representation, describing the rights and responsibilities of union members, officers and employees, and explaining the financial responsibilities of the two labor organizations.

The Reorganization Agreement contains a provision requiring SEIU HCMI to "offer employment and provide job protection, through June 30, 2008, for all full-time Local 79 staff, subject to their termination for cause." Dft. Exh. 1, ¶ 7.

Paragraph 23 of the Reorganization Agreement states, "Any dispute between the parties arising under this agreement, which cannot be resolved by mutual agreement, shall be submitted to the International President, or his/her designee, for final resolution." Dft. Exh. 1, ¶ 23.

### B. The Hampton Agreement

On May 14, 2007, a little over a month prior to the merger agreement, SEIU Local 79's Executive Board approved a series of resolutions providing Local 79 President Willie Hampton with specified benefits. The benefits included: 1) lifetime health and life insurance benefits for Hampton and his dependents after he retires; 2) a new vehicle for Hampton's use after he retires; 3) two first class plane tickets to anywhere in the United States; and 4) a severance payment

equal to six months of Hampton's 2007 pay upon his retirement.

On or about June 5, 2007, less than a week before the effective date of the merger, SEIU Local President Willie Hampton signed documents entitled "Agreement between Willie Hampton and SEIU Local 79" and "Addendum to Agreement" (collectively the "Hampton Agreement"). Dft. Exh. 2. Specifically, the Hampton Agreement provides Hampton with money and other benefits, including payment for 278 days of accrued vacation pay, payment for Hampton's personal attorney fees accrued in drafting the agreement, payment of all Hampton's legal fees, arbitration costs and court costs for resolving the disputes regarding the Supplemental Agreement, the right of Hampton to pick his choice of forum for the resolution of any disputes regarding the Supplemental Agreement, payment to Hampton the amount equal to six months of 401(k) contributions and the establishment of a deferred compensation plan as a receptacle for such money, and payment of $3000 advance Christmas bonus. Id.

Paragraph 6 of the Hampton Agreement provides employment protection for various individuals, stating:

> If during the 12 months following Willie Hampton's retirement any of the below listed individuals are terminated, they will receive salary and insurance coverage through June 30, 2008. This will not apply to individuals terminated for cause or who voluntarily resign or retire.

Id.

The Hampton Agreement was discussed and approved at a Special Meeting of the Local 79 Executive Board three days before Hampton's retirement. Dft. Exh. 16. Defendant contends that the meeting was conducted without prior notice to Executive Board members Marge Faville (the Secretary-Treasurer), Michelle Klint and Wanda Johnson. Dft. Exh. 17, Affidavit of Marge Faville. Plaintiffs, however, assert that proper notice of the meeting was sent to the entire Local

79 Executive Bard by Local 79's secretary, via mailed written notices which were followed up with a phone call to each Board Member. Pltf. Exh. C.

Plaintiffs state that during the meeting, the Executive Board voted to approve the Hampton Agreement. They further state that because the Secretary-Treasurer failed or otherwise refused to attend the meeting, President Hampton directed the Local 79 Recording Secretary, Esta Faye Childs, to co-sign the contribution checks.

### C. The Investigation And Terminations

On July 12, 2007, shortly after Jackson took over as President, Defendant retained attorney Samuel C. McKnight. At Defendant's direction, McKnight conducted an investigation into the actions of Hampton, and into the actions taken at the June 27, 2007 Special Executive Board meeting. McKnight reported his findings to Jackson. On or about August 28, 2007, Jackson called a special Board meeting, and arrived with McKnight. McKnight announced that he was investigating the actions taken at the Special Board meeting of June 27, 2007.

Shortly after, on August 30, 2007, Jackson terminated Murdaugh from his position as a full-time business consultant. Jackson also informed Childs and Pearson that they were suspended indefinitely, pending Defendant's review of various financial and legal matters. On September 30, 2007, Jackson told Childs and Pearson that their suspensions were being converted to terminations, effective October 1, 2007

On December 15, 2007, Defendant held a Board meeting where McKnight gave a final report on his findings and opinions, and gave his recommendations regarding official action that he believed should be taken regarding the June 27, 2007 Special Executive Board meeting. McKnight opined that there was not reasonable notice for the meeting. Motions were then made

and approved to make null and void the actions taken at the June 27, 2007 Special Executive Board Meeting. The Hampton Agreement was rescinded because "as Vice President, Pearson was not authorized under Local 79's Constitution to negotiate or sign such an agreement." Dft. Exh. 4. The Executive Board also passed a motion making null and void the employment protections for Pearson, Childs and Murdaugh that were contained in the Hampton Agreement and disapproved the disbursement of over $50,000 in contributions made to outside entities from checks co-signed by Childs and over $75,000 in benefits granted to Hampton days before his retirement. The Executive Board found that many of these payments presented a possible conflict of interest.

### D. Plaintiffs' Internal Appeal

On January 7, 2008, Plaintiffs submitted notice to Defendant that its termination of Plaintiffs constituted a breach of the Reorganization Agreement and the Hampton Agreement. On March 26, 2008, McKnight responded to Plaintiffs, denying all liability on the part of Defendant, and directing Plaintiffs to submit an appeal to SEIU International President Andrew Stern, as directed under Paragraph 23 of the Reorganization Agreement.

On April 2, 2008, Plaintiffs appealed their terminations under the SEIU Reorganization Agreement to SEIU International President Andrew Stern alleging the Defendant violated the Reorganization Agreement by terminating them without cause. Plaintiffs were represented by counsel and submitted two briefs and twelve exhibits. Defendant responded, submitting two briefs and sixteen exhibits in opposition to Plaintiffs' appeal.

On April 30, 2009, a decision was issued denying Plaintiffs' appeal. Dft. Exh. 8. In it, a determination was made that Pearson and Childs were terminated for cause, and Murdaugh was

5

not an "employee" covered under the employment, but rather a consultant.

**III.    Standard of Review**

A court may grant a motion for summary judgment pursuant to Fed. R. Civ. P. 56 if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party is only required to point out "an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  See Moore v. Philip Morris Co., 8 F.3d 335 (6th Cir. 1993).  If the moving party meets this burden, then "the nonmoving party must go beyond the pleadings… [and] designate specific facts showing that there is a genuine issue for trial."  Moore, 8 F.3d at 339-40 (citing Celotex, 477 U.S. at 324).  The evidence must be weighed in the light most favorable to the non-moving party determine whether a motion for summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**IV.    Analysis**

At issue is whether the Court must give deference to the SEIU President's interpretation of the Reorganization Agreement rather than substituting its judgment for that of the Union in determining whether Defendant had cause to terminate Plaintiffs.

Defendant argues that a union's interpretation of its governing documents is entitled to substantial deference, and should be disturbed on review only if such interpretation is unfair or unreasonable.  In support of their argument, Defendant cites to *Vestal v. Hoffa*, 451 F.2d 706 (6th Cir. 1971) and *Taylor v. Great Lakes Seamen's Union, Local 5000*, 701 F.2d 590 (6th Cir. 1983).

In response, Plaintiffs first argue that Defendant's motion for summary judgment is

6

premature, as discovery has not yet begun.  This argument is without merit, as Defendant is free to file its motion at any time it believes the record is sufficient to support its arguments.  Second, Plaintiffs argue that the cases Defendant cites for its proposition are inapplicable, as they involved equitable claims rather than legal claims like that of Plaintiffs' claims for breach of contract.  In addition, Plaintiffs argue that Defendant's cases are inapplicable because they fall under the Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 *et seq* ("LMRDA")*,* rather than the Labor Management Relations Act, at issue here.  Instead, Plaintiffs argue, the Court should look to *Ruzicka v. General Motors*, 85 L.R.R.M. (BNA) 2419 (E.D.Mich. 1973) for guidance.

The parties agree that Plaintiffs' claims arise under Section 301 of the LMRA.  While *Ruzicka* may have been brought under the LRMA, it is not controlling.  In *Ruzicka*, the Court distinguished the case at hand from other judicial deference cases, including *Vestal,* holding that "where plaintiff's burden of proof was heavier in the union forum than in the federal courts, this court does not believe that deference to the internal union adjudication is required,"  and "judicial deference to internal union proceedings is commendable but inapplicable to the facts at bar."  Id.  Here, there is no indication that Plaintiffs were held to a higher standard of proof during the union proceedings than they would otherwise be in federal court.  The Reorganiztion Agreement did not required a specific standard to be applied in resolving disputes, and the written decision regarding their claims did not apply a specific standard.

Plaintiffs further contend that because both *Vestal* and *Taylor*, cited by Defendant, arose under the LMRD, they are inapplicable to the current analysis.  The Court disagrees.  While those cases may not involve claims under the LMRA, their holdings are instructive and, as

7

*Ruzicka* indicated, are to be considered in making a LMRA ruling. In both cases, the Sixth Circuit maintained significant deference towards union officials in the interpretation of the union's constitution. In *Taylor*, the Sixth Circuit explained, "It is well settled that a union's consistent interpretation of its own constitution will not be disturbed by a federal court unless the challenged regulation is 'unreasonable.'" Taylor, 701 F.2d at 592. In *Vestal*, the Sixth Circuit stated, "Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." Vestal, 451 F.2d at 709.

In addition, the Third Circuit, in an opinion regarding a case brought under the LMRA, in noting the "deference that courts accord to a union's interpretation of its own Constitution," held that "courts typically defer to a union's interpretation of its Constitution and will not override that interpretation unless it is 'patently unreasonable.'" The Executive Board of Transport Workers Union of Philadelphia, Local 234, et al. v. Transport Workers Union of America, et al., 338 F.3d 166, 170 (3rd Cir. 2003).

Accordingly, the Court must next look to the reasonableness of the decision to terminate Plaintiffs. Unless the decision is unreasonable, the Court must uphold it. On April 30, 2009, Alma C. Henderson, pursuant to her designation by International President Andrew L. Stern as designee for final resolution of this matter, issued a decision regarding Plaintiffs' claims. Dft. Exh. 8. The twelve-page opinion ("the Opinion") ruled that the terminations were proper, and did not violate the Reorganization Agreement.

In their response brief, Plaintiffs list various facts and claims that they believe the Opinion failed to address or discredit, and argue that the Opinion was therefore unreasonable.

However, the Court finds that the fact that certain arguments were not specifically addressed in the Opinion does not mean that evidence presented was not considered or that the final conclusion was unreasonable or unfair. The Court is not compelled to conduct a *de novo* review of the decision. The Court has reviewed the Opinion, and believes that it lays out, very methodically, its findings and conclusions justifying the actions taken by Defendant. After reviewing the Opinion and the record before it, the Court believes that the Opinion is reasonable, and must be upheld.

**V. Order**

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED.


Dated: March 22, 2010         s/Bernard A. Friedman_____
       Detroit, Michigan     BERNARD A. FRIEDMAN
                             UNITED STATES DISTRICT JUDGE